**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BECKMAN COULTER, INC., | |
| Plaintiff, | |
| v. | Case No. 1:18-cv-06563 |
| SYSMEX AMERICA, INC and SYSMEX CORPORATION, | Judge John Z. Lee |
| Defendants. | |

**ANSWER OF DEFENDANT SYSMEX CORPORATION TO PLAINTIFF BECKMAN COULTER, INC.'S COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Sysmex Corporation ("Sysmex"), by their undersigned attorneys, responds as follows to the Complaint filed by Plaintiff Beckman Coulter, Inc. ("BCI") on November 3, 2017 in the United States District Court for the Southern District of Florida ("the Florida Action"). The Florida Action was transferred to this district on September 26, 2018. Answers to BCI's specific allegations are contained below in numbered paragraphs that correspond to the numbered paragraphs of BCI's Complaint. Sysmex denies any allegation not expressly admitted in this Answer.

**NATURE OF THE ACTION**

1.      This is a patent infringement action to stop Sysmex's infringement of United States Patent No. 6,581,012, entitled "Automated Laboratory Software Architecture" (the "'012 Patent"). A true and correct copy of the '012 Patent is attached hereto as **Exhibit "A."** BCI is the owner by assignment of the '012 Patent. The '012 Patent describes and claims an integrated clinical laboratory system with integrated work flow automation programming for testing specimens. BCI has owned the '012 Patent throughout Sysmex's infringing acts and still owns it.

**Answer**: Sysmex admits that the complaint purports to assert an action for alleged infringement of U.S. Patent No. 6,581,012 entitled Automated Laboratory Software Architecture

("the 012 Patent") and that BCI seeks to enjoin Sysmex from alleged infringement of the 012 Patent. Sysmex further admits that BCI purports to be the owner of the 012 Patent; and that the 012 Patent is directed to an "extensible clinical laboratory object-based architecture for testing a specimen." Sysmex denies that it has engaged in infringing acts. The remainder of the allegations in Paragraph 1 assert facts for which Sysmex is without knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore, Sysmex denies the same.

## PARTIES

2.      BCI is a Delaware corporation having its principal place of business in Brea, California.

**Answer**: Admitted.

3.      BCI is an industry leader in diagnostics and equipment for biomedical research and testing. BCI's technologies improve the productivity of medical professionals and scientists, supplying critical information for improving patient health and delivering trusted solutions for research and discovery. BCI's technologies are used in thousands of hospitals and laboratory facilities worldwide.

**Answer**: Sysmex denies that BCI is an industry leader. Sysmex lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 3 of BCI's Complaint, and, therefore, denies them.

4.      Sysmex America, Inc. is a Delaware corporation having its principal place of business at 577 Aptakisic Road, Lincolnshire, Illinois 60069.

**Answer**: Admitted.

5.      Sysmex Corporation is a Japan corporation having its principal place of business at 1-5-1 Wakinohama-Kaigandori, Chuo-ku, Kobe 651-0073, Japan.

**Answer**: Admitted.

6.      On information and belief, Sysmex America, Inc. is, at least, an agent of Sysmex Corporation in connection with certain of the activity described below.

**Answer**: Paragraph 6 sets forth legal conclusions for which no answer is required. To the extent an answer to any factual allegations set forth therein is required, Sysmex denies them.

7.      Sysmex states on its website that "Sysmex America, Inc. in Lincolnshire, Illinois, is the US headquarters for Sysmex Corporation based in Kobe, Japan."

**Answer**: Sysmex admits that the sysmex.com website includes the quoted material as part of a broader description of the relationship between Sysmex and SAI, which explains that SAI distributes Sysmex branded products in the United States.

8.      As explained herein, Sysmex's infringement has harmed BCI. Without authorization, Sysmex has made, sold, offered to sell, used and/or imported products and services that infringe the '012 Patent.

**Answer**: Denied.

## JURISDICTION AND VENUE

9.      This action is for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has jurisdiction over the patent infringement cause of action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**Answer**: Sysmex admits that BCI's Complaint purports to be an action that arises under the Patent Laws of the United States Code. Sysmex admits that this Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

10.      The Court has personal jurisdiction over Sysmex because, on information and belief, they have purposefully availed themselves of the privileges of conducting business in the State of Florida; they have sought protection and benefit from the laws of the State of Florida; they conduct business within the State of Florida; they have caused harm to BCI within the State of Florida; and BCI's causes of action arise directly from Sysmex's contacts and other activities in at least the State of Florida.

**Answer**: Paragraph 10 contains legal conclusion to which no answer is required. To the extent an answer is required, Sysmex states that it does not contest personal jurisdiction in this judicial district (i.e., the Northern District of Illinois) for the limited purposes of this action only, and reserves the right to contest personal jurisdiction in any other case. Sysmex otherwise denies the remaining allegations of Paragraph 10.

3

11. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400.

**Answer**: Admitted that venue is proper in the United States District Court for the Northern District of Illinois.

12. Sysmex has committed acts of patent infringement in this district.

**Answer**: Sysmex denies that it has committed any acts of infringement, in this or any other district. To the extent Paragraph 12 is referring to Sysmex America, Inc., Sysmex lacks knowledge or information sufficient to form a belief about the truth of any and all allegations in Paragraph 12 related to Sysmex America, Inc., and, on that basis, denies any and all other allegations.

13. Sysmex America, Inc. has maintained a regular and established place of business in this district, with a physical office at 5721 NW 158th St, Miami Lakes, Florida 33014. Sysmex America, Inc. also recently opened an office in Doral, Florida.

**Answer**: Admitted.

14. On information and belief, Sysmex Corporation does not maintain any regular and established place of business in the United States. Venue is therefore proper as to Sysmex Corporation in any district in the United States.

**Answer**: Paragraph 14 contains legal conclusions to which no answer is required. To the extent an answer is required, Sysmex states that it does not contest venue in this judicial district for the limited purposes of this action only, and reserves the right to contest venue in any other case. Sysmex otherwise denies the remaining allegations of Paragraph 10.

## THE '012 PATENT

15. The '012 Patent issued on June 17, 2003.

**Answer**: Sysmex admits that the 012 Patent purports to have issued on June 17, 2003.

16. BCI owns the right, title, and interest in the '012 Patent, with full rights to pursue recovery of royalties or damages for infringement of the '012 Patent, including full rights to recover past and future damages.

**Answer**: Sysmex admits that BCI purports to own the right, title, and interest in the 012 Patent. Sysmex is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations of Paragraph 16, and therefore, Sysmex denies them.

17. Each claim of the '012 Patent is valid and enforceable.

**Answer**: Denied.

18. The '012 Patent describes a technical solution to a technical problem. For example, specimen analysis and processing systems prior to the '012 Patent performed only some but not all technical aspects of a laboratory work flow. Pre-analytical tasks such as order entry, specimen collection and labeling, specimen receipt, specimen sorting, aliquoting, specimen delivery, work load balancing, and ordering reflex testing were performed separately from analytical tasks such as quality control analysis, analyzer checks, specimen identification, sample analysis, sample preparation, and test repeats. Such analytical tasks were, in turn, performed separately from post-analytical tasks such as test data review, result verification, quality assurance analysis, insurance claims, results data storage, specimen storage, and specimen retrieval.

**Answer**: Denied.

19. Due to prior technical limitations, no single system existed that seamlessly performed the diverse aspects of the laboratory testing process. The invention of the '012 Patent solved this problem through the use of an extensible object-based architecture.

**Answer**: Denied.

20. The programming objects and methods of the '012 Patent invention permit integration between the pre-analytical, analytical and post-analytical aspects of a laboratory facility, and further permit automation and increased scalability, which had not been possible due to the technical limitations of prior systems.

**Answer**: Denied.

21. As explained in greater detail below, Sysmex provide products and services that use the technology claimed by '012 Patent, and have offered infringing products for sale nationwide and in this judicial district, including at least the XN-9000 series of hematology analyzer products.

**Answer**: Sysmex admits that it manufactures many of the component parts for the XN-9000 and XN-9100 in Japan and ships the component parts to SAI in Illinois where SAI assembles the XN-9000 and XN-9100 products, and further that SAI has the exclusive right to market, distribute, and sell the XN-9000 and XN-9100 products in the United States. Sysmex denies the

remaining allegations of this paragraph, including allegations of infringement in this or any other judicial district.

**FACTUAL BACKGROUND**

22.     Sysmex offers products and services that are similar to BCI's products and services.

**Answer**: Except as admitted in response to Paragraph 21 and Paragraphs 23-25, Sysmex lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore, denies them.

23.     Sysmex and BCI both offer medical laboratory diagnostic and analysis equipment, such as hematology analyzer systems.

**Answer**: Sysmex admits that the XN-3000, XN-3100, XN-9000, and XN-9100 products are hematology analyzer systems.  Sysmex further admits, on information and belief, that BCI sells hematology analyzer systems.  Except as so admitted, Sysmex lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 23, and, therefore, denies them.

24.     Sysmex and BCI directly compete for customers and potential customers of medical laboratory diagnostic and analysis equipment, including hematology analyzer systems.

**Answer**: Sysmex admits that the XN-3000, XN-3100, XN-9000 and XN-9100 products are hematology analyzer systems.  Sysmex further admits, on information and belief, that BCI sells hematology analyzer products.  Except as so admitted, Sysmex lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 24, and therefore, denies them.

25.     Sysmex manufactures and/or sells a plurality of devices for automated execution of blood analyses. These hematology analysis units are sold by Sysmex under the product series name "XN Series." The XN Series includes the products XN-1000, XN-2000, XN-3000, and XN-9000, which differ from one another with regard to technical equipment and configuration and the number of specimens that can be analyzed per unit of time.

**Answer**: Sysmex admits that it manufactures hematology analyzers, including components for the XN-1000, XN-2000, XN-3000, and XN-9000 hematology analyzer product series. Sysmex further admits that it ships the components for the XN-1000, XN-2000, XN-3000 and XN-9000 hematology analyzer products to SAI in Illinois, where SAI has the exclusive right to sell the XN-series products in the United States. Sysmex admits that there are differences among the products offered in the XN-series. Sysmex denies the remaining allegations set forth in Paragraph 25.

26.   The XN-1000 is the basic model of the XN Series and in the basic configuration has an XN analysis module of the type XN-10 and a sampler module or sample transportation module of the type SA-10, which can accommodate up to five racks with blood samples. The XN-1000 is capable of analyzing about 100 blood samples per hour.

**Answer**: Sysmex admits that the XN-1000 is a hematology analyzer that includes multiple components and functionality. Sysmex further avers that the allegations of this paragraph do not fully describe the components and functionality of the XN-1000 hematology analyzer product, and therefore, denies the remaining allegations of this paragraph.

27.   By comparison with the XN-1000, the XN-2000 offers twice the range of functions and is equipped with two XN analysis modules and an SA-20 type sampler module for up to ten racks. The XN-2000 is capable of achieving a throughput of 200 blood samples per hour.

**Answer**: Sysmex admits that the XN-2000 is a hematology analyzer that includes multiple components and functionality. Sysmex further avers that the allegations of this paragraph do not fully describe the components and functionality of the XN-2000 hematology analyzer product, and therefore, denies the remaining allegations of this paragraph.

28.   In addition to the equipment of the XN-2000, the XN-3000 has a SP-10 type slide preparation unit, which provides automated production of blood smears in the context of sample preparation. Blood smears produced by the slide preparation unit can then be automatically analyzed by one of the XN analysis modules.

**Answer**: Sysmex admits that the XN-3000 is a hematology analyzer that includes multiple components and functionality. Sysmex further avers that the allegations of this paragraph do not

fully describe the components and functionality of the XN-3000 hematology analyzer product, and

therefore, denies the remaining allegations of this paragraph.

29. The XN-9000 is the most comprehensive product of the XN Series and is designed for a high throughput of blood samples. The basic model of the XN-9000 has at least the same equipment as the XN-3000, but is expandable and can be adapted in modular fashion to the specific needs of hospitals and laboratories.

**Answer**: Sysmex admits that the XN-9000 is a hematology analyzer that includes multiple

components and functionality. Sysmex further avers that the allegations of this paragraph do not

fully describe the components and functionality of the XN-9000 hematology analyzer product, and

therefore, denies the remaining allegations of this paragraph.

30. Sysmex advertises that the XN-9000 offers a "Flexible modular design for scalability and future expandability" and uses a "Lavender Top Management with Sysmex WAM Middleware" such that "Results and specimen management are easily scaled to support a wide range of laboratory environments."

**Answer**: Sysmex admits that some of the advertising for the XN-9000 purportedly includes

the quoted material, along with other information that describes the features and functionality of

the XN-9000. Sysmex further avers that the allegations of this paragraph do not fully describe the

XN-9000, and therefore, denies the remaining allegations of this paragraph.

31. Sysmex describes the operation of the XN-9000 as follows: *"The XN-9000 takes a whole new approach to hematology automation and offers a suite of higher capacity solutions that are both scalable and configurable. If you need to integrate workstations to improve turnaround time and labor utilization, the XN-9000 can be tailored to meet your requirements. Up to 9 analytical modules may be combined in one integrated system. This configuration can also include other automation modules such as the Sysmex SP-10 slidemaker/stainer, automated reagent preparation units (Sysmex RU-20), tube sorters, and hemoglobin A1c testing modules.*

**Answer**: Sysmex admits that some of the advertising for the XN-9000 purportedly includes

the quoted material, along with other information that describes the features and functionality of

the XN-9000. Sysmex further avers that the allegations of this paragraph do not fully describe the

XN-9000, and therefore, denies the remaining allegations of this paragraph.

32. Sysmex further describes the XN-9000 as offering: *"Flexible modular design for scalability and future expandability."*

**Answer**: Sysmex admits that some of the advertising for the XN-9000 purportedly includes the quoted material, along with other information that describes the features and functionality of the XN-9000. Sysmex further avers that the allegations of this paragraph do not fully describe the XN-9000, and therefore, denies the remaining allegations of this paragraph.

33.     A sample configuration of an XN-9000 system, as advertised by Sysmex, is attached as **Exhibit "B."** The configuration includes a slidemaker/stainer (SP-10), two specimen analysis modules (XN-10), a specimen transport module, and an information processing unit.

**Answer**: Sysmex denies that Exhibit B is a true and correct copy of the XN-9000 system, as advertised by SAI.

34.     The XN-9000 is a system for use in all three phases of the analysis cycle for specimen material: pre-analytical, analytical and post-analytical processing. Sysmex advertises the XN-9000 as an "Option for laboratories desiring hands-free pre- and post-analytical Lavender Top Management® (LTM) solution."

**Answer**: The first sentence of Paragraph 34 sets forth legal conclusions to which no answer is required. To the extent an answer to any factual allegation is required, Sysmex denies them. Sysmex admits that some of the advertising for the XN-9000 purportedly includes the quoted material, along with other information that describes the features and functionality of the XN-9000. Sysmex further avers that the allegations of this paragraph do not fully describe the components and functionality of the XN-9000 hematology analyzer product, and therefore denies the remaining allegations of this paragraph.

35.     The XN-9000 system includes an extensible clinical laboratory object-based architecture for testing a specimen. The architecture is configured for providing laboratory information flow management for pre-analytical, analytical and post-analytical laboratory processing.

**Answer**: Paragraph 35 sets forth legal conclusions to which no answer is required. To the extent an answer to any factual allegations is required, Sysmex denies them. Sysmex further denies that it infringes any asserted claim to the extent this paragraph is an attempt to so allege.

36.     The XN-9000 architecture includes a physical element layer that includes at least one specimen processing module for performing at least one test on a specimen.

**Answer**: Paragraph 36 sets forth legal conclusions to which no answer is required.  To the

extent an answer to any factual allegations is required, Sysmex denies them.  Sysmex further denies

that it infringes any asserted claim to the extent this paragraph is an attempt to so allege.

37.     The XN-9000 architecture includes an integrated work flow automation layer for communicating with a specimen processing module. On information and belief, and as will be confirmed through an inspection of the XN-9000 source code, the work flow automation layer of the XN-9000 architecture includes a set of integrated work flow object classes for performing specimen tests, and which include programming objects which can be specialized.

**Answer**: Paragraph 37 sets forth legal conclusions to which no answer is required.  To the

extent an answer to any factual allegations is required, Sysmex denies them.  Sysmex further denies

that it infringes any asserted claim to the extent this paragraph is an attempt to so allege.

38.     The XN-9000, through its object-based architecture, processes user requests for specimen tests. On information and belief, and as will be confirmed through an inspection of the XN-9000 source code, the workflow automation layer of the XN-9000 architecture includes means for processing such requests using structure that is the same as or equivalent to what is described in the '012 Patent specification.

**Answer**: Paragraph 38 sets forth legal conclusions to which no answer is required.  To the

extent an answer to any factual allegations is required, Sysmex denies them.  Sysmex further denies

that it infringes any asserted claim to the extent this paragraph is an attempt to so allege.

39.     The XN-9000, through its object-based architecture, provides functional control of a specimen processing module. On information and belief, and as will be confirmed through an inspection of the XN-9000 source code, the workflow automation layer of the XN-9000 architecture further includes means for providing such control using structure that is the same as or equivalent to what is described in the '012 Patent specification.

**Answer**: Paragraph 39 sets forth legal conclusions to which no answer is required.  To the

extent an answer to any factual allegations is required, Sysmex denies them.  Sysmex further denies

that it infringes any asserted claim to the extent this paragraph is an attempt to so allege.

40.     The XN-9000, through its object-based architecture, processes test result data from specimen tests. On information and belief, and as will be confirmed through an inspection of the

10

XN-9000 source code, the workflow automation layer of the XN-9000 architecture includes means for processing such test result data using structure that is the same as or equivalent to what is described in the '012 Patent specification.

**Answer**: Paragraph 40 sets forth legal conclusions to which no answer is required. To the extent an answer to any factual allegations is required, Sysmex denies them. Sysmex further denies that it infringes any asserted claim to the extent this paragraph is an attempt to so allege.

41. On information and belief, and as will be confirmed through an inspection of the XN-9000 source code, the workflow automation layer of the XN-9000 architecture includes published interfaces through which the architecture may be extended.

**Answer**: Paragraph 41 sets forth legal conclusions to which no answer is required. To the extent an answer to any factual allegations is required, Sysmex denies them. Sysmex further denies that it infringes any asserted claim to the extent this paragraph is an attempt to so allege.

42. The XN-9000 architecture includes an integrated user interface layer for communicating with the workflow automation layer to permit a user to control and monitor the system.

**Answer**: Paragraph 42 sets forth legal conclusions to which no answer is required. To the extent an answer to any factual allegations is required, Sysmex denies them. Sysmex further denies that it infringes any asserted claim to the extent this paragraph is an attempt to so allege.

43. The XN-9000 architecture further includes at least one specimen delivery module for transporting specimens to and from at least one specimen processing module.

**Answer**: Paragraph 43 sets forth legal conclusions to which no answer is required. To the extent an answer to any factual allegations is required, Sysmex denies them. Sysmex further denies that it infringes any asserted claim to the extent this paragraph is an attempt to so allege.

44. The XN-9000, through its object-based architecture, controls specimen position, routing and distribution to processing sites. On information and belief, and as will be confirmed through an inspection of the XN-9000 source code, the workflow automation layer of the XN-9000 architecture further includes means for controlling specimen position, routing and distribution to processing sites using structure that is the same as or equivalent to what is described in the '012 Patent specification.

11

**Answer**: Paragraph 44 sets forth legal conclusions to which no answer is required.  To the extent an answer to any factual allegations is required, Sysmex denies them. Sysmex further denies that it infringes any asserted claim to the extent this paragraph is an attempt to so allege.

45.    BCI requested access to the source code for the XN-9000. As of the filing of this Complaint, Sysmex has not made the complete source code available and has not indicated that they will make the source code available.

**Answer**: Sysmex denies that, at the time of this filing, BCI requested access to the source code for the XN-9000.  Pursuant to a letter dated October 17, 2017, BCI requested and Sysmex provided BCI with the portion of the source code for the XN-9000 series that is purportedly covered by the GNU General Public License.  In addition, pursuant to BCI's discovery request in the Florida Action, BCI inspected the source code for the XN-IPU and the WAM Middleware which, based upon information and belief, are the purported targets of BCI's infringement allegations.

46.    On October 5, 2017, Sysmex introduced a new product in the United States which it denoted as the XN-9100. According to Sysmex, the XN-9100 "provides the same reliable and proficient connectivity options as the XN-9000, but with greater customization that saves space and maximizes productivity." On information and belief, the operation of the XN-9000 system described in paragraphs 29 – 44 above applies equally to the XN-9100 system.

**Answer**: Sysmex admits that SAI issued a press release dated October 5, 2017 announcing that "it is introducing . . . two hematology automation systems that will provide laboratories in the United States with more customized, scalable and efficient operations. . . . The new [XN-9100] system provides the same reliable and proficient connectivity options as the XN-9000, but with greater customization that saves space and maximizes productivity."  Sysmex denies the remaining allegations of Paragraph 46.

47.    All conditions precedent to the filing in this action have occurred, have been performed or have been waived.

**Answer**: Sysmex lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 47, and, therefore, denies them.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,581,012

48. BCI refers to and incorporates herein the allegations of Paragraphs 1-47 above.

**Answer**: Sysmex reasserts its responses to Paragraphs 1-47 of BCI's Complaint as if fully set forth herein.

49. Sysmex have offered infringing products for sale nationwide and in this judicial district, including at least the XN-9000 and XN-9100 Automated Hematology System.

**Answer**: Denied.

50. Sysmex have infringed and are still infringing at least claims 1, 14, 15 and 19 of the '012 Patent by making, selling, and using hematology analyzer systems that embody the patented invention, including at least the XN-9000 and XN-9100 Automated Hematology System, and Sysmex will continue to do so unless enjoined by this Court.

**Answer**: Denied.

51. Sysmex's infringement of the '012 Patent has occurred with knowledge of the '012 Patent and willfully, intentionally and deliberately in violation of 35 U.S.C. § 284. Despite their knowledge of the '012 Patent, Sysmex have not taken steps to avoid infringement.

**Answer**: Denied.

52. BCI has been injured by Sysmex's ongoing, willful infringement of the '012 Patent and is entitled to recover damages adequate to compensate BCI for infringement of the '012 Patent.

**Answer**: Denied.

53. BCI has provided notice of the '012 Patent to Sysmex in compliance with the statutory requirement of 35 U.S.C. § 287.

**Answer**: Denied.

## RESPONSE TO PRAYER FOR RELIEF

Sysmex denies that BCI is entitled to any of the relief requested. Rather, the Complaint should be dismissed with prejudice with a finding of no infringement and invalidity in favor of SAI and Sysmex.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Sysmex demands a trial by jury for all issues set forth in BCI's Complaint and Sysmex's Affirmative Defenses so triable.

## FIRST AFFIRMATIVE DEFENSE

BCI's complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Sysmex has not infringed, and does not infringe any claim of the 012 Patent, including claims 1, 14, 15, and 19, literally, under the doctrine of equivalents, directly or indirectly, contributorily, by inducement, or in any other manner.

## THIRD AFFIRMATIVE DEFENSE

The claims 1, 14, 15, and 19 of the 012 Patent are invalid for failing to comply with the conditions and requirements for patentability set forth in the United States Patent Laws, including, without limitation, in 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

## FOURTH AFFIRMATIVE DEFENSE

BCI's claim for damages is limited pursuant to 35 U.S.C. § 286.

## FIFTH AFFIRMATIVE DEFENSE

BCI's claim for damages is barred, in whole or in part, for failure to comply with the marking and notice requirements of 35 U.S.C. § 287.

Dated: October 10, 2018

Respectfully submitted,

/s/Ralph J. Gabric
Ralph J. Gabric
Laura Beth Miller
Erik M. Bokar

14

BRINKS GILSON & LIONE
NBC Tower, Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL 60611
Phone: (312) 321-4200
rgabric@brinksgilson.com
lmiller@brinksgilson.com
ebokar@brinksgilson.com

*Attorneys for Defendants*
*Sysmex Corporation and*
*Sysmex America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on October 10, 2018 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Wesley O. Mueller
David Airan
Aaron R. Feigelson
Nicole E. Kopinski
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, IL 60601
Phone: (312) 616-5600
wmueller@leydig.com
dairain@leydig.com
arf@leydig.com
nkopinski@leydig.com

*Attorneys for Plaintiff*
*Beckman Coulter, Inc.*

*/s/Ralph J. Gabric_____*
Ralph J. Gabric
